UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANTHONY BERRY                    :
                                 :    Civ. No. 16-cv-03489
        v.                       :
                                 :
UNITED STATES OF AMERICA         :

**UNITED STATES UPDATED MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Anthony Berry once again seeks to undo the consequences of his
knowing and voluntary guilty plea. This time, he contends that his conviction
and sentence under 18 U.S.C. § 924(c) cannot stand because they supposedly
depend upon a provision that the Supreme Court recently has voided on
vagueness grounds.

Berry has procedurally defaulted on his claim. And, he is not actually
innocent of a § 924(c) offense. Accordingly, and for the reasons set forth below,
Berry's motion should be denied without an evidentiary hearing and this case
should be closed.[1]

I.    **BACKGROUND**

As detailed in Berry's guilty plea agreement, guilty plea colloquy, and
Presentence Investigation Report ("PSR"), on April 5, 2008, he and two
accomplices (hereinafter "B.J." and "T.D.") committed an armed robbery of a
Sports Authority Distribution Facility in Burlington Township, New Jersey

---

[1]      The Government reserves the right to submit further briefing and
testimony in the event that the Court wishes to hold an evidentiary hearing on
the issues raised in the motion.

(hereinafter "Sports Authority Facility" or "Facility"). PSR ¶¶ 12-21, 23; Plea

Agreement, Crim. No. 10-cr-51-JEI, Docket Entry No. 14, at Schedule A

(hereinafter "Schedule A"); See Plea Colloquy Tr. at 40-41.

The key facts underlying this robbery are undisputed. On or prior to

April 5, 2008, B.J. stole a Salson Logistics tractor-truck to transport

merchandise that Berry, B.J., and T.D. were intending to steal from the

Facility. Schedule A at ¶ 1(b); PSR ¶ 16; Plea Colloquy Tr. at 41. After B.J. stole

the tractor-truck for this intended use, Berry, B.J., and T.D. traveled from

Philadelphia, Pennsylvania to the Facility in Burlington County to commit the

robbery. Schedule A at ¶ 1(c); Plea Colloquy Tr. at 41.

After arriving at the Facility, Berry "approached the guard shack and, at

gun-point and in the presence of T.D., ordered the security guard to proceed to

an empty trailer where the security guard was bound and ordered to lay

facedown inside the empty trailer." Schedule A at ¶ 1(d). As described in detail

in the PSR,

> A review of video surveillance, as well as witness interviews,
> revealed that Berry and [T.D.] approached the guard shack at the
> Distribution Facility at approximately 5:45 p.m. on April 5, 2008,
> displaying a weapon. Thereafter, the lone guard was escorted by
> [T.D.] and Berry from the guard shack to an empty trailer located
> in the yard of the facility. According to the guard, he was forced
> into the empty trailer at gunpoint, tied up and directed to lay face
> down where he remained for approximately three hours. The guard
> described the two robbers who approached the guard shack as
> black males, one brandishing a firearm.

PSR at ¶ 15; see also id. at ¶ 28 ("In this case, [T.D.] and Berry escorted the

victim security guard at gun point to an empty trailer where he was physically

restrained and forced to lay face down for approximately three hours."). Berry's

2

position during his guilty plea colloquy was that T.D.—and not Berry—was the robber who physically handled the gun. Berry agreed, however, that T.D. brandished the gun in Berry's presence and that Berry continued to actively participate in the robbery while knowing that the gun was being used contemporaneously to facilitate the robbery. Plea Colloquy Tr. at 41-42. Berry also admitted that he was properly liable for the brandishing charge under § 924(c) based on applicable law. Plea Colloquy Tr. at 41-42; see also id. at 22 (Berry's counsel explaining that "[i]t's not simply that someone used the gun, but that another person knew that the gun would be used or was used.").

According to Berry, after the security guard was tied up in the empty trailer, T.D. remained in the trailer and stood watch over the guard while Berry "assumed the role of the security guard in the guard shack." Schedule A at ¶ 1(e); PSR ¶ 16; Plea Colloquy Tr. at 42. Meanwhile, B.J. removed three trailers' worth of stolen merchandise from the Sports Authority Facility, ultimately driving away with the final trailer load. PSR ¶ 16; Plea Colloquy Tr. at 42. Berry and T.D. then stole the security guard's car from the grounds of the Facility and followed the final trailer so that Berry, T.D., and B.J. could all flee the scene. Schedule A at ¶ 1(f)-(g); Plea Colloquy Tr. at 42. Berry, T.D., and B.J. then traveled from Burlington County back to Philadelphia, where they met at a location with the intent to sell the merchandise that they had stolen. Schedule A at ¶ 1(h); Plea Colloquy Tr. at 42-43. The cost of the stolen Sports Authority merchandise was estimated to be approximately $500,000, and the

loss to Sports Authority for this merchandise was estimated to be approximately $231,726. Schedule A at ¶ 1(i); PSR ¶ 17.

In light of this conduct, the United States charged Berry by complaint on February 5, 2009 with (1) conspiracy to transport stolen merchandise in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 371; (2) theft from interstate shipment in violation of 18 U.S.C. §§ 2314 and 2; and (3) possession/use of a handgun during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. See Complaint, Crim. No. 10-cr-51-JEI, Docket Entry No. 1. For the § 924(c) count, the Complaint alleged that "[o]n or about April 5, 2008...Berry did intentionally and knowingly possess, carry, brandish, discharge and use a firearm, namely a handgun, during and in relation to a crime of violence for which he may be prosecuted in a court in the United States, that is conspiracy and theft from interstate shipment as charged in Counts 1 and 2." Id.

Berry entered into a fact-stipulated guilty plea agreement and pleaded guilty to a two-count Information. The plea agreement stated:

> Conditioned on the understandings specified below, this Office will accept guilty pleas from Anthony Berry to a two-count Information, which charges conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a), and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. If Anthony Berry enters guilty pleas and is sentenced on these charges, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against Anthony Berry for the conspiracy to rob, and subsequent armed robbery of the Sports Distribution Facility in Burlington Township, New Jersey, on or about April 5, 2008, as more fully described in the Information and Criminal Complaint, Magistrate No. 09-2009 (JS).

Plea Agreement at 1 (emphasis added). Notably, Berry's plea agreement did not limit his § 924(c) charge to a predicate "conspiracy" to commit robbery; instead, it simply described the charge as "use of a firearm during and in relation to a crime of violence." Id. (emphasis added).

> The plea agreement added:

> [I]n the event that the guilty pleas in this matter are not entered for any reason or the judgment of conviction entered as a result of these guilty pleas do not remain in full force and effect, [Berry] agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by [him] may be commenced against him, notwithstanding the expiration of the limitations period after [he] signs the agreement.

Id. Schedule A of the plea agreement also contained several factual stipulations describing Berry's role in the armed robbery of the Sports Authority.

Berry also entered into a standard cooperation agreement with the Government. [2] As part of Berry's cooperation agreement with the Government, Berry agreed that he "shall not commit or attempt to commit any additional crimes." Cooperation Agreement at 2. This cooperation agreement explicitly referenced the plea agreement and stated that "[t]he plea agreement and this cooperation agreement together constitute the full and complete agreement between the parties." Cooperation Agreement at 1.

---

[2]    The PSR incorrectly listed the date of the plea agreement as May 29, 2009; the actual date of the plea agreement was December 23, 2009.  Compare PSR at ¶ 36 with Plea Agreement at 1; see also Plea Colloquy Tr. at 44-45. Meanwhile, the cooperation agreement was dated January 28, 2010—the same date as the guilty plea hearing.  See Plea Colloquy Tr. at 44-45 (reflecting date of "second document" regarding agreement with the Government).

The corresponding Information charged Berry with one count of conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a), and contained a description of Berry's role in the commission of the underlying robbery. See Information, Crim No. 10-cr-51-JEI, Docket Entry No. 11, at 1-4. The Information also charged Berry with one count of knowingly and willfully using, carrying, and brandishing a firearm "during and in relation to the commission of a crime of violence for which he may be prosecuted in a court of the United States, that is conspiracy to commit the robbery of the Sports Authority Distribution Facility in Burlington Township, New Jersey, contrary to Title 18, United States Code, Section 1951(a), as alleged in Count One of this Information," in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i) and 18 U.S.C. § 2. Id. at 5.

Berry entered his guilty plea on these charges on January 28, 2010. During Berry's guilty plea colloquy, the District Court (Hon. Joseph E. Irenas, U.S.D.J.) questioned counsel about the language of the § 924(c) charge in the Information. See Plea Colloquy Tr. at 17-23. The Court and counsel then discussed the concept of "aiding and abetting"/accomplice liability under 18 U.S.C. § 2, as well as the related concept of co-conspirator liability. Id. at 19-20. Ultimately, the Court, counsel, and Berry himself agreed that Berry was properly liable for the § 924(c) charge in the Information, even though Berry's position was that T.D.—and not Berry himself—was the person who physically handled the gun that was used during the robbery. Id. at 21-23; 41-42. Berry set forth a detailed factual basis in support of both charges in the Information

6

and also confirmed his agreement with all the stipulations in Schedule A of his plea agreement. See Plea Colloquy Tr. at 40-44.

Judge Irenas made the requisite legal and factual findings, accepted Berry's guilty plea, and scheduled the matter for sentencing. Id. at 44, 46-47. Prior to sentencing, the Probation Department concluded that Berry was a Career Offender facing a statutory minimum, consecutive term of imprisonment of 25 years for Count Two and therefore a Guidelines range of 451–488 months' imprisonment. PSR ¶¶ 54 & n.5, 123–124. The Government subsequently moved under U.S.S.G. § 5K.1 and 18 U.S.C. § 3553(e) for a downward departure for Berry. That, in turn, enabled Judge Irenas to impose a sentence substantially below the Guidelines range and the statutory minimum term of imprisonment.

The Government outlined its downward departure motions in a sentencing memorandum dated July 28, 2010, which the Government submitted to Judge Irenas under seal.[3] Sentencing Memo at 2-4. This sentencing memorandum also outlined a "major divergence" in the facts regarding the April 5, 2008 Hobbs Act robbery. Id. at 2. Finally, the memorandum provided details about some *additional* violent crimes for which Berry was responsible, including crimes that Berry committed *after* he began cooperating with the Government. Id. at 3-4.

---

[3]    The Government submitted this sentencing memorandum to Judge Irenas under seal and therefore is not attaching a copy as an exhibit. Rather, the Government is submitting a hard copy of the sentencing memorandum to the Court.

With respect to the "major divergence" of facts, the Government's sentencing memorandum stated that "[b]oth Berry and [T.D.] acknowledge that a gun was used to take control of the security guard. However, both Berry and [T.D.] say that the other possessed the gun. Both agree that they continued with the robbery with the knowledge that a gun was being used." Id. at 2-3.

With respect to Berry's cooperation and additional violent crimes, the Government's sentencing memorandum stated that as early as August 22, 2008, Berry had made recordings for the Government and provided crucial other evidence against his co-conspirators. Id. at 3. This evidence had allowed the Government to charge both B.J. and T.D. in January 2009. Id. At that point, the Government had "had no reason to question the veracity of Berry's statements nor the reliability of the information that he provided." Id.

However, "[a]gents learned in March 2009, that Berry was involved in a July 2008 and September 2008 burglary of a business in Philadelphia. He was also involved in another robbery of the same Philadelphia business in March 2009 but this time shot an employee during the robbery." Id. Notably, "[a]lthough Berry was charged by Complaint in February 2009 with the instant offense, he had lost contact with the FBI agents and was not arrested until March 1, 2009. This arrest was on the Philadelphia activity. Berry did not make his first appearance on this case until November 2009." Id.

The history of Berry's additional violent crimes that the Government reported in its sentencing memorandum was consistent with the history of additional violent crimes reflected in Berry's PSR. Among other things, the PSR

8

noted that Berry committed one of his additional burglaries, as well as his takeover robbery, *after* "cooperating" with the FBI in this case. Even worse, during the takeover robbery, Berry and his co-conspirators physically bound a group of employees with zip ties, and Berry himself shot an individual. See, e.g., PSR ¶¶ 92-96a.

At the October 5, 2010 sentencing hearing, after granting the Government's departure motion, the Court sentenced Berry to a total of 225 months' imprisonment, 50 months of which were to be served concurrently with his previously-imposed 135-month sentence in the Eastern District of Pennsylvania. See PSR ¶ 92. Under that sentence, Berry was to serve 100 months' imprisonment on Count 1, 50 which were to be served concurrently with the Eastern District of Pennsylvania sentence. And Berry was to serve 125 months' imprisonment on Count 2 of the Information, to be served consecutively to all other terms of imprisonment. See Judgment, Crim. No. 10-cr-51-JEI, Docket Entry No. 17 (later amended at Docket Entry No. 23 to correct a clerical mistake regarding restitution payment). On October 8, 2010, the Court entered its judgment. Id.

Berry did not appeal. But on June 27, 2012, he filed a "Petition Seeking the Great Writ of Liberty (Habeas Corpus Ad Sub Jiciendum)." See Petition, Civil No. 12-cv-03928-JEI, at Docket Entry No. 1. In this filing, Berry relied on the Suspension Clause of the Constitution and essentially argued that Congress did not have the constitutional authority to enact the statutes criminalizing the offenses to which he pleaded guilty. See id. Judge Irenas

recharacterized Berry's filing as a petition for relief under § 2255 and, on July 13, 2012, the Court issued an Order dismissing Berry's Petition both because it was untimely and also because it was without merit. See Order Dismissing Petition, Civil No. 12-cv-03928-JEI, Docket Entry No. 4 (reviewing Berry's various court filings).[4]

Not to be deterred, on August 8, 2012, Berry filed a "Petition for Writ of Error," in which he questioned the Court's jurisdiction, claimed that the Court had committed "clear error" by failing to give the required notice under United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999), and accused Judge Irenas of committing treason by dismissing Berry's prior Petition. See Petition, Civil No. 12-cv-03928-JEI, at Docket Entry No. 3. Judge Irenas construed Berry's August 8, 2012 filing as a motion for reconsideration and denied the motion both because it was untimely and also because a Miller notice was not required "where, as here, the motion in question was already barred by AEDPA's statute of limitations at the time of filing." See Order Dismissing Petition, Civil No. 12-cv-03928-JEI, Docket Entry No. 4 (internal citation omitted).

On June 16, 2016, Berry filed his current § 2255 motion. See Motion to Correct Sentence Under 28 U.S.C. § 2255, Crim. No. 16-cv-3489-NLH, Docket Entry No. 1 (hereinafter "Motion"). In it, he argued that in light of Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015), and its progeny, his conviction under 18 U.S.C. § 924(c) must be vacated because "his predicate

---

[4]    This Order mistakenly notes that Berry was indicted by a Grand Jury on February 5, 2009. In fact, that is the date of his Criminal Complaint.

crime of Hobbs Act Robbery" no longer constitutes a "crime of violence." <u>Id.</u> at 5. Berry reasoned that his "predicate crime of Hobbs Act Robbery fell under § 924(c)(3)'s residual clause, which is now void for vagueness" and that "Hobbs Act robbery does not have 'as an element the use, attempted use, or threatened use of physical force against the person or property of another,' as required by the element-of-force clause." <u>Id.</u>

The Government ultimately filed a response to Berry's motion on February 12, 2020, and the Court dismissed the motion for lack of jurisdiction and transferred the case to the Third Circuit Court of Appeals.  <u>See</u> Crim. No. 16-cv-3489-NLH, Docket Entry Nos. 18, 21 & 22.  On April 28, 2020, the Third Circuit granted Berry's application for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255 and transferred the case back to this Court.  <u>See</u> Crim. No. 16-cv-3489-NLH, Docket Entry No. 24.[5]  The Government now provides this (slightly updated) response to Berry's motion.

For the reasons set forth herein, Berry's motion should be dismissed.

---

[5]    The Third Circuit's grant of Berry's application signifies only that Berry has satisfied the "light burden" of making the minimal, prima facie showing that is necessary for him to bring a second or successive motion. That grant does not mean Berry should prevail on his claims.  <u>See</u> <u>In re Pendleton</u>, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam) ("Under our precedent, a prima facie showing in this context merely means a sufficient showing of possible merit to warrant a fuller exploration by the district court."); <u>see</u> <u>also</u> <u>In re Hoffner</u>, 870 F.3d 301, 307 (3d Cir. 2017) (characterizing the prima facie showing as  "light burden").

## II.   ARGUMENT

### A.   Berry has defaulted on a claim that his 924(c) conviction is invalid because it was premised on a Hobbs Act conspiracy.

Berry's <u>pro se</u> motion mistakenly asserts that he was convicted for a 924(c) violation that was premised on a *substantive* Hobbs Act robbery. <u>See generally</u>, Motion (describing Berry's predicate crime of violence as the commission of a "Hobbs Act robbery" rather than as a conviction for a conspiracy to commit Hobbs Act robbery). In fact, and as reflected in both Berry's judgment of conviction and his Information, he pled guilty to a Hobbs Act *conspiracy,* not a substantive Hobbs Act robbery.

Accordingly, the Government is construing Berry's motion to assert a claim that his 924(c) conviction premised on a Hobbs Act *conspiracy* cannot stand because the residual clause of § 924(c)(3) is now void for vagueness under <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019). The Government concedes that Hobbs Act conspiracies no longer count as § 924(c) predicates after <u>Davis</u>. Even so, this Court should deny the § 2255 motion because Berry procedurally defaulted his vagueness claim and can neither excuse that default nor show that he is actually innocent of an equally or more serious offense that still counts as a § 924(c) predicate: namely, strong-arm robbery under the Hobbs Act. <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 621-22 (1998).

### 1.   Berry's knowing and voluntary guilty plea precludes the collateral relief that he is seeking

A guilty plea is an admission of all the elements and material facts of the criminal charge contained in an Indictment or Information. <u>See</u> <u>United States</u>

v. Broce, 488 U.S. 563, 569 (1989). Because the need for finality has "'special force with respect to convictions based on guilty pleas,'" a guilty plea may be attacked on collateral review only in "strictly limited" circumstances. Bousley, 523 U.S. at 621 (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). In particular, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984).

Thus, when a defendant files a § 2255 motion to challenge the validity of a conviction pursuant to a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." Broce, 488 U.S. at 569. A decision to plead guilty does not fail the knowing and voluntary test merely because later judicial decisions may demonstrate that the defendant "did not correctly assess every relevant factor entering into his decision" to plead guilty. Bousley, 523 U.S. at 619 (internal quotation marks and citation omitted).

There is no suggestion here that Berry's counseled guilty plea was not knowing or voluntary. In fact, the contents of Berry's plea agreement and his guilty plea colloquy prove otherwise. Berry's guilty plea was knowing because he understood the nature of the charges against him and he was aware of the direct consequences of his guilty plea. Brady v. United States, 397 U.S. 742, 755 (1970). His guilty plea colloquy reflects that the Court and counsel took great pains to inform Berry of his charges and the consequences thereof, as well as the applicable legal framework. See Plea Colloquy Tr. at 17-23, 41-42.

13

Berry well knew the staggering amount of prison time that he faced as a result of his second-or-successive conviction under § 924(c)—at a time when such convictions carried consecutive, mandatory minimum sentences of 25 years. See PSR at ¶ 123. Under all the circumstances, Berry wisely chose to plead guilty and cooperate with the Government, with the hope that he might earn a lower sentence through cooperation.

And, thanks in large part to the Government's motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), Berry *did* manage to receive a sentence that was below the mandatory minimum sentence—despite the fact that after Berry's criminal conduct in this case, he committed *additional* violent crimes, shot an individual, and fled from his FBI handlers until he was arrested. See PSR at ¶¶ 92-96a; see Sentencing Memo at 2-4. That Berry may not have "correctly assess[ed] every relevant factor entering into his decision'" to plead guilty, Bousley, 523 U.S. at 619, does not mean that Berry's guilty plea was not knowing and voluntary. Indeed, given the circumstances of this case, Berry should consider himself lucky for the relatively lenient sentence that he received.

### 2. **Actual innocence, cause, and prejudice standards.**

Collateral review under § 2255 is "not a substitute for direct review." Hodge v. United States, 554 F.3d 372, 379 (3d Cir. 2009). Claims of errors that could have been raised on direct appeal, but were not, are procedurally barred in a § 2255 motion unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense.

14

Bousley, 523 U.S. at 622; United States v. Frady, 456 U.S. 152, 167 (1982);

United States v. Travillion, 759 F.3d 281, 288 n. 11 (3d Cir. 2014).

To satisfy the "cause" prong, "the petitioner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000) (internal quotation marks and citations omitted). To demonstrate prejudice, the petitioner must show more than a mere "possibility of prejudice" and that the alleged errors "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170.

By failing to file a direct appeal of his conviction, Berry procedurally defaulted on his claim that his 924(c) conviction is invalid. As set forth below, Berry can show neither cause nor prejudice for his failure to previously challenge his § 924(c) conviction as unconstitutionally vague, and the facts here make clear that Berry is not actually innocent. Accordingly, his procedural default cannot be excused and his motion should be denied.

### 3. Berry cannot demonstrate "actual innocence."

At the outset, Berry cannot demonstrate "actual innocence."

Even though the definition of "crime of violence" in the residual clause of § 924(c)(3) is unconstitutionally vague, and Hobbs Act conspiracy can no longer be considered a "crime of violence" after Davis—Berry is not actually innocent of his § 924(c) conviction. This is because Berry remains factually guilty of a different crime of violence under the unchallenged *elements* clause of § 924(c).

15

As Berry's guilty plea made clear, Berry is guilty of a substantive Hobbs Act robbery.

### a.   Berry is guilty of a Hobbs Act robbery.

There is no question that Berry actually committed a substantive Hobbs Act robbery and therefore he is not legally innocent of that crime. Berry's detailed plea colloquy and fact-stipulated plea agreement carefully describe Berry's role in the Hobbs Act robbery of the Sports Authority on April 5, 2008. Berry has proffered no evidence to cast doubt on the detailed admissions he made during his guilty plea colloquy and in his fact-stipulated plea agreement. The record shows Berry's active participation in the robbery; his underlying "crime of violence" is not in dispute.

Under the procedural default doctrine, it is irrelevant that Berry was not convicted for the predicate offense of substantive Hobbs Act robbery. Section 924(c)'s plain language only requires that Berry "may be" prosecuted for the predicate offense; no separate conviction is required. Consistent with this language, the Third Circuit has long held that it is the commission of the underlying crime of violence—and not the language of the ultimate conviction— that matters under the Bousley analysis for purposes of an actual innocence claim. See, e.g., United States v. Lake, 150 F.3d 269, 275 (3d Cir. 1998) (holding that convictions under 924(c) do not require a conviction on the predicate crime of violence or drug trafficking offense). To secure a conviction under § 924(c), there need only be "legally sufficient proof that the predicate

crime of violence…was committed." Johnson v. United States, 779 F.3d 125, 130 (2d Cir. 2015). Here, there is no question that such proof exists.[6]

Similarly, it makes no difference that during the plea colloquy, Berry insisted that it was his co-conspirator T.D.—and not Berry himself—who physically handled the gun during the predicate Hobbs Act robbery. See Plea Colloquy Tr. at 41-42. Berry allocuted that (1) while at the Sports Authority Distribution Facility, his accomplice T.D. "approach[ed] the guard shack and at gunpoint in [Berry's] presence order[ed] the security guard to proceed to the empty trailer, where the security guard was bound and ordered to lay facedown inside the trailer"; (2) T.D. himself was holding the gun during the robbery, in Berry's presence; and (3) "in spite of knowing that [T.D.] possessed and brandished the firearm, having seen him use it to order the security guard out of the guard shack, [Berry] knowingly and willfully continued to participate in the conspiracy to rob the Sports Authority Distribution Facility." Id. Under these facts, Berry can be held liable under § 924(c) for T.D.'s brandishing of a firearm. See Plea Colloquy Tr. at 41-42; see also id. at 22 (Berry's counsel explaining that "[i]t's not simply that someone used the gun, but that another

_____

[6]     The facts and claims in this case parallel those made in Higa v. United States, Civil No. 16-211 DKW-WRP, 2019 WL 4143289 (D. Haw. Aug. 30, 2019). In Higa, the petitioner brought a claim under § 2255 and argued that, in order for his § 924(c) conviction to be sustained after Davis, he had to be convicted of a substantive Hobbs Act robbery rather than a Hobbs Act conspiracy. Id. at **1-3. The district court in the District of Hawai'i rejected this argument and dismissed the petition, noting there were sufficient facts to show that the petitioner was actually guilty of a committing the substantive Hobbs Act robbery where the petitioner's plea agreement contained "a statement of facts describing [petitioner's] conduct during the commission of his crimes." Id. This Court should follow suit.

person knew that the gun would be used or was used."); United States v. Ramos, 147 F.3d 281, 286 (3d Cir. 1998); United States v. Casiano, 113 F.3d 420, 427 (3d Cir. 1997); see also Rosemond v. United States, 134 S.Ct. 1240 (2014) (defendant may be found guilty of violating § 924(c) under an aiding and abetting theory). Again, the same conclusion emerges: Berry is guilty of a Hobbs Act robbery, which is a crime of violence.

### b.   Hobbs Act robbery is a "crime of violence."

Hobbs Act robbery is defined as follows:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). This statute obviously "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," and therefore it qualifies as a "crime of violence" under the unchallenged *elements* clause of § 924(c)(3)(A).[7] Based on the language of the statute alone, Hobbs Act robbery is categorically a crime of violence.

Other Circuits also have reached this determination, holding that Hobbs Act robbery is categorically a crime of violence under the elements clause of 924(c). United States v. Garcia-Ortiz, 904 F.3d 102 (1st Cir. 2018); United

---

[7]   Davis invalidated the residual clause of 924(c), but it left intact the elements clause of that same statute, which provides an independent definition of a "crime of violence."

States v. Hill, 890 F.3d 51 (2d Cir. 2018); United States v. Mathis, 932 F.3d 242, 265-67 (4th Cir. 2019); United States v. Buck, 847 F.3d 267, 274-75 (5th Cir. 2017); United States v. Gooch, 850 F.3d 285, 292 (6th Cir. 2017); United States v. Fox, 878 F.3d 574, 579 (7th Cir. 2017); United States v. Jones, 919 F.3d 1064, 1072 (8th Cir. 2019); United States v. Melgar-Cabrera, 892 F.3d 1053 (10th Cir. 2018); In re St. Fleur, 824 F.3d 1337, 1341 (11th Cir. 2016). The Hon. Julio M. Fuentes, U.S.C.J., reached the same conclusion in his concurring opinion in United States v. Robinson, 844 F.3d 137, 147-51 (3d Cir. 2016).[8] This Court should do the same.[9]

This approach also is consistent with the history of the § 924(c) statute. The obvious intent of § 924(c) is to assure an additional punishment for those who create heightened risk, or cause additional harm, through possession of a firearm in connection with a violent crime or drug trafficking offense. Since 1984, courts have repeatedly and uniformly treated federal robbery offenses as

---

[8]   The majority opinion in Robinson did not employ a categorical approach to reach the same result. See generally United States v. Robinson, 844 F.3d 137 (3d Cir. 2016). After Davis, the Government concedes that it is necessary to use a categorical approach when evaluating predicate crimes of violence under § 924(c).

[9]   See also United States v. Ingram, 947 F.3d 1021, 1025–26 (7th Cir. 2020) (attempted Hobbs Act robbery); United States v. Dominguez, 954 F.3d 1251, 1258-62 (9th Cir. 2020) (both Hobbs Act robbery and attempted Hobbs Act robbery); United States v. Richardson, 948 F.3d 733, 741–42 (6th Cir. 2020) (aiding and abetting Hobbs Act robbery); United States v. St. Hubert, 909 F.3d 335, 351–53 (11th Cir. 2018) (attempted Hobbs Act robbery); United States v. Garcia-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018); (aiding and abetting Hobbs Act robbery); United States v. Deiter, 890 F.3d 1203, 1215–16 (10th Cir. 2018) (aiding and abetting Hobbs Act robbery); In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016) (aiding and abetting Hobbs Act robbery).

crimes of violence; meanwhile, Congress has repeatedly amended the statute to expand its reach and to *increase* the penalties. Abbott v. United States, 562 U.S. 8, 23-24 (2010) (reciting this history, and accordingly rejecting an effort to narrow § 924(c)). See Robinson, 844 F.3d at 151 (Fuentes, J., concurring) (observing that the definition of Hobbs Act robbery is materially identical to the definition of bank robbery in 18 U.S.C. § 2113(a), which "Congress specifically singled . . . as a crime that is the prototypical 'crime of violence' captured by Section 924(c)."). History supports the conclusion that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c).

Moreover, Hobbs Act robbery presents a categorical match with the requirements of the § 924(c) elements clause. As set forth earlier, the § 924(c) elements clause requires "as an element the use, attempted use, or threatened use of physical force against the person or property of another," while Hobbs Act robbery involves "actual or threatened force, or violence, or fear of injury, immediate or future, to . . . person or property." This is a categorical match. The "physical force" requirement of the elements clause is satisfied by any force (or threat thereof) that is "capable of causing physical pain or injury" or overcoming resistance, Stokeling v. United States, 139 S. Ct. 544, 553 (2019) (interpreting the same term as used in ACCA), and therefore the Hobbs Act requirement of "force," "violence," or "injury" plainly suffices. See also United States v. Ramos, 892 F.3d 599, 611 (3d Cir. 2018) ("bodily injury," whether caused directly or indirectly, involves the use of "physical force" under the elements clause in USSG § 4B1.2); United States v. Chapman, 866 F.3d 129,

135 (3d Cir. 2017) (mailing a "threat to injure," 18 U.S.C. § 876(c), is

categorically a crime of violence under the elements clause in USSG § 4B1.2

because "threatening to injure the person of the addressee or of another

necessarily threatens the use of physical force").[10]

For these reasons, Hobbs Act robbery meets the definition of a crime of

violence under the § 924(c) elements clause, and the decision in Davis

invalidating the residual clause has no effect on this result. It follows that,

because Berry is actually guilty of a Hobbs Act robbery, his 924(c) conviction

remains valid and his § 2255 claim must be dismissed.

### c. Berry's arguments and hypothetical examples fail to show that Hobbs Act robbery may be committed without the requisite actual or threatened force.

Despite this wall of contrary precedent, Berry argues that substantive

Hobbs Act robbery should not qualify as a crime of violence. He contends that

"[i]n this context, physical force means violent force" and "[t]he offense defined

by 18 U.S.C. § 1951(a) does not categorically require the use of violent force."

Motion at 5. Berry then claims that "a person may commit Hobbs Act robbery

by such non-forcible means as placing a person in fear of future injury (say, by

---

[10]    See also United States v. Wilson, 880 F.3d 80, 84-85 (3d Cir. 2018) (holding that the least serious of the acts described in the bank robbery statute can be satisfied with "intimidation," which "clearly does involve the 'threatened use of physical force against the person of another'" under the similar elements clause of U.S.S.G. § 4B1.2(a)(1), using "a common sense understanding of the word 'intimidation'"); United States v. Johnson, 899 F.3d 191, 202-04 (3d Cir. 2018) (holding that armed bank robbery in violation of 18 U.S.C. § 2113(d) is a "crime of violence" under § 924(c) and stating that "Wilson forecloses Johnson's argument that bank robbery is not a crime of violence under the § 924(c)(3) elements clause. Therefore, we do not reach the question of whether the residual clause is void for vagueness.").

threatening to stealthily cause harm 'just when you least expect it'), or even by threatening to cause the devaluation of an investment (say, by tearing up a promissory note)." Motion at 5. Berry is incorrect.

At the outset, there is no confusion about the requisite nature or degree of force required for a Hobbs Act robbery. The degree of force necessary to satisfy the ACCA's similar elements clause is simply force capable of overcoming a victim's resistance, "however slight" that resistance might be. Stokeling, 139 S. Ct. at 550. That is the same degree of force required for robbery under the common law, and it is the degree of force required for Hobbs Act robbery. United States v. Melgar-Cabrera, 892 F.3d 1053, 1064 (10th Cir. 2018). Moreover, the force, violence, and fear of injury attendant to Hobbs Act robbery is materially the same as the force required under the armed bank robbery statute, 18 U.S.C. § 2113(d), which the Third Circuit has held satisfies the 924(c) elements clause. United States v. Johnson, 899 F.3d 191, 202-04 (3d Cir. 2018). Indeed, even *unarmed* bank robbery in violation of the first paragraph of 18 U.S.C. § 2113(a) is a crime of violence under both § 924(c)(3)'s elements clause and the nearly identical elements clause in U.S.S.G. § 4B1.2(a). See Johnson, 899 F.3d at 204; United States v. Wilson, 880 F.3d 80, 83-88 (3d Cir.), cert. denied, 138 S. Ct. 2586 (2018)

In the face of this caselaw, Berry offers two hypothetical examples of a Hobbs Act robbery that purportedly may be committed without the required force or threat of same. But neither example actually assists Berry in his argument. Berry first hypothesizes a Hobbs Act robbery that somehow could be

22

committed by "threatening to stealthily cause harm 'just when you least expect it.'" Motion at 5. Without more information regarding this hypothetical robbery, the Government is hard-pressed to determine whether it qualifies as a Hobbs Act robbery. Regardless, the Government submits that the issue is resolved by the statutory language itself.

The full phrase in the statute is "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . ." Hobbs Act robbery, an historically forceful crime, is distinguishable from extortion, which is addressed separately in the same statute and is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Berry's first hypothetical example would only qualify as a Hobbs Act robbery if the threatened harm "when you least expect it" necessarily would be carried out by force or a threat thereof—in which case, it would meet the requirement of the 924(c) elements clause and qualify as a crime of violence.

Berry's second hypothetical example is a robbery that is committed "by threatening to cause the devaluation of an investment (say, by tearing up a promissory note)." Motion at 5. This hypothetical example also fails. Unless the promissory note were physically wrested from another by force, or threat thereof—the defendant in this example would be guilty only of the separate offense of extortion in violation of the Hobbs Act, not robbery. The robbery

23

provision, as opposed to the extortion provision, requires at minimum the use of force, or violence, or the fear of physical injury against property. The Supreme Court and the Third Circuit have determined that statutes involving proof of "injury" satisfy the requirement of the use of physical force. In the context of the Hobbs Act robbery provision and the 924(c) elements clause, which both allow for the use of physical force against either person or property, this clearly applies to tangible property; one does not "injure" intangible property through physical force.

The First Circuit rejected an argument similar to the one advanced by Berry in the context of a promissory note, stating:

> We also find ourselves unpersuaded that a threat to devalue an intangible economic interest constitutes the type of "injury" described in the Hobbs Act's robbery provision—"by means of actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951(b)(1). Cf. United States v. Melgar-Cabrera, 892 F.3d 1053, 1066 (10th Cir. 2018) (putting someone in "fear of injury" requires the threatened use of physical force). Applying the canon of noscitur a sociis, the "fear of injury" contemplated by the statute must be like the "force" or "violence" described in the clauses preceding it. See Yates v. United States, 135 S.Ct. 1074, 1085 (2015) (stating that canon as "a word is known by the company it keeps"). This reading and García's inability to point to any convictions for Hobbs Act robbery based upon threats to devalue intangible property convince us that Hobbs Act robbery, even when based upon a threat of injury to property, requires a threat of the kind of force described in Johnson I, that is, "violent force . . . capable of causing physical pain or injury."

United States v. Garcia-Ortiz, 904 F.3d 102, 107 (1st Cir. 2018) (quoting Johnson v. United States, 559 U.S. 133, 140 (2010)).

In short, Berry "does not present any valid examples of how a Hobbs Act robbery could be committed by threatening to devalue some economic interest

24

where the perpetrator does not threaten to employ the type of force capable of causing injury to someone's property." Cancel-Marrero v. United States, 333 F. Supp. 3d 40, 45 (D.P.R. 2018). Accordingly, he fails under the categorical approach to establish a realistic probability that the robbery statute may apply without proof of the required element.

Moreover, Berry's hypothetical examples are just that, hypothetical examples—not reports of any actual robbery prosecutions. According to the Supreme Court, "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense." Moncrieffe v. Holder, 569 U.S. 184, 191 (2013) (addressing the categorical approach in the context of an immigration statute, and quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)). In Duenas-Alvarez, the Court stated that the categorical approach

> requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

549 U.S. at 193. See also, e.g., United States v. Patterson, 853 F.3d 298, 304 (6th Cir. 2017) (rejecting effort to "[c]oncoct[] hypothetical and unrealistic examples divorced from the case law"). Berry's far-fetched suggestion that someone could commit a robbery by threatening to damage intangible property by tearing up a promissory note does not demonstrate that Hobbs Act robbery is categorically overbroad under the elements clause, because there is no

example of any prosecution under that theory. <u>Garcia-Ortiz</u>, 904 F.3d at 107 (rejecting the intangible property argument regarding the status of Hobbs Act robbery as a 924(c) crime of violence as there are no examples of any such prosecution); <u>United States v. Hill</u>, 890 F.3d 51, 57 n.9 (2d Cir. 2018) (same).

Thus, all of Berry's arguments fail. By its terms, Hobbs Act robbery categorically requires proof of the knowing use or threatened use of force, violence, or fear of injury to person or property, and thus categorically presents "as an element the use, attempted use, or threatened use of physical force against the person or property of another"—matching the definition of a crime of violence under § 924(c)(3)(A). Berry's motion should be dismissed.

### d.   The Government forewent more serious charges.

Berry's claim of "actual innocence" fails for an additional reason. "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." <u>Bousley</u>, 523 U.S. at 624. Here, the Government did indeed forgo more serious charges when it permitted Berry to enter his now-challenged guilty plea.

For example, based on the admitted facts in Berry's fact-stipulated plea agreement and plea colloquy, there was a potential carjacking charge that could have been the basis for yet another § 924(c) charge. That is because, during the April 5, 2008 armed robbery, Berry and T.D. effectively stole the security guard's car at gunpoint. <u>See</u> PSR ¶ 15 ("The guard submitted that after what seemed to be a very long time, [T.D.] took his (the guard's) wallet, *car keys*

and cell phone, and stated 'we know where you live—don't do anything stupid,' and then left the empty trailer leaving the guard behind.") (emphasis added); Schedule A at ¶ 1(g) ("T.D. and [Berry] stole the security guard's car which was on the grounds of the Sports Authority Distribution Facility"). Convictions on these additional charges would have brought about a higher total sentencing exposure and mandatory minimum sentence for Berry, as well as additional serious penalties.[11]

The Government forewent these potential additional charges against Berry in connection with his guilty plea. And, the Government went even further in its negotiations with Berry: as part of Berry's plea agreement, the Government entered into a cooperation agreement with Berry. Under this agreement, Berry would cooperate with law enforcement in exchange for the Government's promise to file a § 5K1.1 motion (and, possibly, at the Government's discretion, a motion under 18 U.S.C. § 3553(e)) if certain conditions were met.

The Government certainly was not required to enter into a cooperation agreement with Berry, but it did—and Berry substantially benefited from that agreement. Despite Berry's failure to be truthful with the Government about

---

[11]     Using similar reasoning, other district courts recently have denied nearly-identical claims brought under Davis.  See, e.g., McKinney v. United States, Civil Case No. 16-cv-00149, 2020 WL 475196, **4-6 (W.D. N.C. Jan. 29, 2020) (dismissing § 2255 petition on the basis of procedural default under Bousley and observing that the Government had dismissed a "more serious count"—specifically, substantive Hobbs Act robbery—in exchange for petitioner's guilty plea to the Hobbs Act conspiracy charged in the Information).

having committed another violent crime near the time of the April 5, 2008 robbery—*and despite Berry's commission of two more violent crimes after agreeing to cooperate with the Government*—the Government *still* made a motion at Berry's sentencing under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). This motion allowed Berry to receive a sentence below the then-applicable mandatory minimum sentence of 25 years on his § 924(c) charge. And, in fact, the Government's motion greatly benefited Berry, as Judge Irenas ultimately sentenced Berry to a total term of incarceration that was below 25 years. See Judgment, Crim. No. 10-cr-51-JEI, Docket Entry No. 17.

Under all these facts and circumstances, Berry cannot show that he is "actually innocent" of the Hobbs Act robbery or the other serious charges that the Government forwent. Instead, the record reflects that Berry *was* guilty, he *knew* he was guilty, and he received *considerable benefit* from his plea and cooperation agreements with the Government—agreements that the Court should not now unravel.

### 4.    Berry cannot show "cause" and "prejudice."

Similarly, Berry's motion must be dismissed because he cannot demonstrate both "cause" and "prejudice" justifying his procedural default.

To show cause to overcome a procedural default, a defendant must generally "show that some objective factor external to the defense impeded counsel's efforts" to raise the claim. Murray v. Carrier, 477 U.S. 478, 488 (1986). Some examples of external impediments that have been found to suffice include "interference by officials" or ineffective assistance of counsel. United

States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005). Cause may also exist where "a constitutional claim is so novel that its legal basis is not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984).

In determining whether a claim is "novel" for purposes of establishing cause for a procedural default, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." Smith v. Murray, 477 U.S. 527, 537 (1986). Crucially, it is not sufficient to argue that it would have been futile to bring such claims before Johnson or Davis, because such claims were not actually foreclosed by binding precedent. As the Supreme Court has held, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623 (internal quotation marks and citations omitted).

At the time of Berry's sentencing, he had all the "tools to construct," Engle v. Isaac, 456 U.S. 107, 133 (1982), the claim he raises now, i.e., that the definition of "crime of violence" in § 924(c) is unconstitutionally vague. The Supreme Court and the Third Circuit have long recognized that vague laws— including statutes fixing the punishment for a crime—violate due process. See Connally v. General Const. Co., 269 U.S. 385, 391 (1926); United States v. Batchelder, 442 U.S. 114 (1979); United States v. Loy, 237 F.3d 251, 262 (3d Cir. 2001); United States v. Pungitore, 910 F.2d 1084, 1104 (3d Cir. 1990). Berry previously could have mounted a vagueness challenge to the definition of "crime of violence" in § 924(c), but he did not. See Dugger v. Adams, 489 U.S.

401, 49-10 (1989) (finding that a claim was not novel where "the legal basis for a challenge was plainly available"); see also United States v. Smith, 241 F.3d 546, 548-49 (7th Cir. 2001) (Easterbrook, J.) (holding that Apprendi v. New Jersey, 530 U.S. 460 (2000) was not novel because "the foundation for Apprendi" existed long before the decision itself was announced).

Likewise, Berry cannot show actual prejudice from his decision to plead guilty to the § 924(c) count and to not appeal it. Under the terms of Berry's plea agreement, if the convictions entered as a result of his guilty plea did "not remain in full force and effect, [Berry] agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by Anthony Berry may be commenced against him, notwithstanding the expiration of the limitations period after Anthony Berry signed the agreement." Plea Agreement at 1. As a result, had Berry successfully challenged his § 924(c) conviction based on the Hobbs Act conspiracy, he would have exposed himself to the more dire consequences of the substantive Hobbs Act robbery and the other charges and consequences outlined above, to which he readily admitted guilt in his fact-stipulated plea agreement and during his guilty plea hearing, and which clearly qualify as crimes of violence even under the categorical approach.

In short, Berry suffered no actual prejudice here. Instead, he greatly benefitted from being allowed to premise his § 924(c) conviction on a single count of Hobbs Act conspiracy and receiving all the benefits of a cooperation agreement—which proved to be significant in Berry's case, and which the

Government upheld despite Berry's continued commission of violent crimes during the cooperation period. Accordingly, Berry has procedurally defaulted on his claim and has failed to show that such default was excused.

    **C.    Should this Court nonetheless conclude that Berry should prevail, the Government would have the right to bring new charges while obtaining a de novo resentencing on the remaining count of conviction.**

Even if Berry were worthy of relief, and he is not, the appropriate remedy would not be lopping off the consecutive sentence he received for his § 924(c) count of conviction. Rather, as noted above, the Government would have the right to institute new charges for his conduct during the Distribution Center robbery. Those charges could include not just strong-arm robbery under the Hobbs Act and a 924(c) brandishing charge. They could also include possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In light of Berry's deplorable criminal history, which includes multiple felony convictions for robbery, assault and burglary, PSR ¶¶ 61–62, 66–68, 78–79, 82–91a, that could expose Berry to an enhanced sentence of 15-years'-to-life imprisonment under the Armed Career Criminal Act on just a § 922(g)(1) conviction alone.

Beyond that, the Government would be entitled to a <u>de novo</u> resentencing on the Hobbs Act conspiracy count of conviction under the sentencing package doctrine. <u>See</u> <u>Greenlaw v. United States</u>, 554 U.S. 237, 253-54 (2008). And at that resentencing, this Court could impose the same total consecutive term of imprisonment (175 months) that Judge Irenas had made consecutive to the term of imprisonment in the Eastern District of Pennsylvania case. That is because the statutory maximum term of imprisonment for Hobbs Act

conspiracy is 20 years, 18 U.S.C. § 9151(a); PSR ¶ 122, and courts have broad discretion under 18 U.S.C. § 3584 to impose sentences that are consecutive to other sentences.

Under the "sentencing package doctrine," when "a conviction for one or more interdependent counts is vacated on appeal, the resentencing proceeding conducted on remand is de novo unless" the Court of Appeals "specifically limit[s] the district court's authority." United States v. Diaz, 639 F.3d 616, 619 (3d Cir. 2011) (internal quotation marks omitted). Accordingly, "where a sentencing judge imposed a multicount sentence aware that a mandatory consecutive sentence is to be tacked on to it and the mandatory sentence is later stricken, the judge is entitled to reconsider the sentence imposed on the remaining counts." United States v. Davis, 112 F.3d 118, 123 (3d Cir. 1997) (internal quotation marks omitted); accord Diaz, 639 F.3d at 619-20; see Dean v. United States, 137 S. Ct. 1170, 1176 (2017) (acknowledging that appellate courts "routinely agree" after invalidating 924(c) convictions to "vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence").

Both Davis and Diaz "dealt with the vacation of a § 924(c) count and . . . held that the § 924(c) count and underlying offense 'are interdependent and result in an aggregate sentence, not sentences which may be treated discretely.'" Diaz, 639 F.3d at 620 (quoting Davis, 112 F.3d at 121). If this Court vacates the § 924(c) count of conviction, Berry's case would be no different. Indeed, at the original sentencing, Judge Irenas necessarily

concluded that a 175-month aggregate consecutive sentence in this case was "sufficient, but greater than necessary" to effectuate the goals of sentencing, 18 U.S.C. § 3553(a), even though all of that sentence, thanks to the Government's § 3553(e) motions, was discretionary.

Judge Irenas could have granted a substantially lower sentence, or made virtually all of the sentence for Count One concurrent with the Eastern District of Pennsylvania sentence if he thought that a 175-month consecutive sentence was too long. See Dean, 137 S. Ct. at 1176-78. He did not. And the fact remains that, even if Berry were no longer guilty of a 924(c) offense, he pled guilty to committing a violent Hobbs Act robbery conspiracy at gunpoint. Under those circumstances, this Court could well conclude at a de novo resentencing that Berry should serve the same aggregate consecutive sentence that Judge Irenas originally imposed.

## III. CONCLUSION

For the foregoing reasons, this Court should deny Berry's § 2255 motions, without a hearing. And because no reasonable jurist could disagree with that disposition, this Court also should decline to issue a certificate of appealability.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney

_s/Sara Aliabadi_
By:  Sara A. Aliabadi
Assistant U.S. Attorney